Opinión disidente emitida por la
Juez Asociada Señora Rodríguez Rodríguez.
La controversia en este caso gira en torno al proceso de recusación por domicilio de unos electores inscritos en el Precinto 066 del Municipio de Orocovis instado por el Partido Popular Democrático. El Tribunal de Apelaciones, revocando al foro primario, desestimó las peticiones de recusación presentadas. Hoy, este Tribunal, a mi juicio erróneamente, revoca al foro apelativo intermedio. Con este curso de acción el Tribunal minusvalora el requisito de justa causa para la publicación del edicto de recusación que exige la Ley Electoral de Puerto Rico. No puedo estar conforme con este curso de acción.
Este Tribunal plantea la controversia existente como un problema de falta de espacio y disponibilidad del periódico El Vocero de Puerto Rico para la publicación, por lo que concluye hubo justa causa para la publicación tardía del edicto. En realidad, la controversia debe enfocarse desde la perspectiva de las diligencias llevadas a cabo por el Partido Popular Democrático para cumplir con el término reglamentario de publicación del edicto. A poco que las evaluemos, es forzoso concluir que éstas no constituyen justa causa que justifique validar la publicación tardía del edicto en este caso. Así, el único remedio disponible era la desestimación de las recusaciones presentadas, tal y como hizo el foro apelativo intermedio.
*948 Lo hechos en este caso aparecen resumidos en la sentencia que hoy se dicta por lo que nos parece innecesario relatarlos nuevamente.
I
Nuestra democracia representativa es la piedra angular de nuestra vida colectiva como pueblo. Así se recoge con claridad en el Preámbulo de la Constitución del Estado Libre Asociado de Puerto Rico, al enfatizarse el carácter democrático de nuestra sociedad donde el orden político emana del pueblo y se ejerce con arreglo a la voluntad manifiesta en las urnas. McClintock v. Rivera Schatz, 171 D.P.R. 584 (2007). El voto es, por lo tanto, el mecanismo que potencia nuestra vida en democracia.
La Constitución del Estado Libre Asociado ordena ex-presamente garantizar el sufragio universal, igual, directo y secreto y proteger este derecho contra toda coacción en su ejercicio. Art. II, Sec. 2, Const. E.L.A., L.P.R.A., Tomo 1. Véanse, además: P.P.D. v. Admor. Gen. de Elecciones, 111 D.P.R. 199, 222 (1981); P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400, 405 (1980). En P.P.D. v. Admor. Gen. de Elecciones, supra, pág. 221, reconocimos que el derecho al voto es uno de los derechos fundamentales del ciudadano y como tal, “es nuestra obligación hacerlo observar y respetar”.
El sujeto principal de nuestro entramado constitucional-electoral es, sin duda, el elector individual por ser el titular de este derecho fundamental. Hemos advertido en el pasado que quien impugne el derecho a votar de un ciudadano carga sobre sí con el onus de demostrar, mediante prueba clara, robusta y convincente, que el elector no está apto para ejercer su derecho. Además, cualquier duda sobre si se cumplen o no con los requisitos del proceso de recusaciones tiene que resolverse a favor del ciudadano y de su derecho a ejercer el sufragio.
Por otro lado, la Asamblea Legislativa tiene una amplia facultad para regular el proceso electoral. Art. IV, Sec. 4, *949 Const. E.L.A., L.P.R.A., Tomo 1. Hemos reconocido que toda aquella reglamentación que, sin obstaculizar innecesariamente el voto, propenda a la realización de un proceso electoral justo, ordenado, libre de fraude, honesto e íntegro, es válida. P.S.P., P.P.D., P.I.P. v. Romero Barceló, 110 D.P.R. 248 (1980); P.N.P. v. Tribunal Electoral, 104 D.P.R. 741 (1976).
En P.P.D. v. Admor. Gen. de Elecciones, supra, pág. 227, nos expresamos sobre el proceso de recusación([1]) e indicamos sobre éste que constituye “un entredicho contra la validez del voto. Si bien no lo anula de primera intención, su propósito es precisamente anularlo”. Señalamos también que el elector cuyo voto se impugna debe tener derecho a contradecir la recusación y “a comparecer y ser oído en la vista en que se examine y pueda adjudicarse la procedencia de la recusación. A ese fin, debe ser citado con suficiente antelación y de manera efectiva. No debe bastar, a este efecto, un mero diligenciamiento negativo de una citación. Debe quedar demostrado que se hicieron esfuerzos razonables para notificarle”. íd., págs. 232-233.
II
La Comisión Estatal de Elecciones, conforme a los poderes que le confiere la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. see. 3001 et seq., aprobó el Reglamento para el Trámite de Recusaciones de la Ley Electoral, Comisión Estatal de Elecciones, 13 de noviembre de 2007 (Reglamento). El Reglamento se adoptó con el propósito, entre *950 otros, de regular el proceso de recusación de un elector. Véase Comisionado v. Presidenta, 166 D.P.R. 513 (2007).
El Título II del Reglamento regula todo lo concerniente al procedimiento de recusación de electores. Según éste, el Art. 2.12 del Reglamento dispone el trámite que se ha de seguir cuando el ciudadano que será recusado no pueda ser notificado personalmente del trámite de recusación iniciado en su contra. Es decir, regula la notificación por edictos. La disposición establece lo siguiente:
Cuando la persona recusada no pudiere ser localizada después de haberse realizado todas las diligencias pertinentes dentro del plazo correspondiente (Diligenciamiento Negativo), el diligenciante (emplazador), certificará mediante Declaración Jurada en el formulario R-002 (Autorización para Emplazar), y bajo apercibimiento de perjurio, todas las gestiones que realizó que resultaron infructuosas para notificar al elector recusado; con una relación del día, la hora y los nombres, apellidos y dirección exacta de las personas entrevistadas.
El Presidente de la Comisión Local, una vez examine las diligencias de la declaración Jurada conforme a la Regla Núm. 4 de las “Reglas de Procedimiento Civil para el Tribunal General de Justicia”, de 1979 según enmendadas determinará si autoriza que la notificación de la recusación se haga por edicto. El edicto se publicará en un periódico de circulación general, una vez dentro del plazo de diez (10) días a partir de la fecha de la autorización. El diligenciante ... [d]eberá además, dentro del plazo de los diez (10) días, notificar la “Citación a Vista” por correo certificado con acuse de recibo a la última dirección del elector que surja del Registro General de Electores o de la transacción electoral que corresponda ....
El diligenciante o la persona en quien éste delegue acreditará ante la Junta de Inscripción la publicación del edicto no más tarde de los cinco (5) días siguientes a los diez (10) días para su publicación, mediante los siguientes documentos:
a) Una declaración jurada del administrador o agente autorizado del periódico, acompañada de un (1) ejemplar del edicto publicado, el cual se podrá acreditar vía fax. Pero se presentará el original el día de la vista.
b) Un recibo del Correo del envío que se hizo de la “Citación a Vista” por correo certificado con acuse de recibo, en original, más
*951 c) Su propia Declaración Jurada bajo apercibimiento de perjurio, según aparece en el formulario de “Citación a Vista Cr-003).
Si transcurrido el periodo de cinco (5) días, luego de expirado el plazo de diez (10) días para la publicación del edicto, no se acreditare el hecho de dicha publicación se entenderá desistida la recusación sin perjuicio de que, aduciéndose justa causa, pueda iniciarse una nueva recusación .... Id., págs. 14-16.
Se advierte de lo anterior que el procedimiento de recusación es riguroso y detallado. Y así debe ser, pues lo que está en juego es el ejercicio de un derecho constitucional. Ello nos obliga a exigir el cumplimiento riguroso con los requisitos para emplazar mediante edicto a un elector.
De otra parte, se observa de la disposición que los términos allí dispuestos no son de carácter jurisdiccional, sino más bien de cumplimiento estricto. En Arriaga v. F.S.E., 145 D.P.R. 122, 132 (1998), indicamos que para que exista justa causa, las explicaciones para el incumplimiento tienen que basarse en “explicaciones concretas y particulares, ... que le permitan al tribunal concluir que la tardanza o demora ocurrió razonablemente, por circunstancias especiales”. (Enfasis suplido.) Corresponde por lo tanto a la parte que ha incumplido con el término de cumplimiento estricto, la responsabilidad de demostrar a cabalidad la causa justa para su incumplimiento.
Conforme a lo anterior, pasemos a aplicar la doctrina expuesta a los hechos ante nuestra consideración.
III
Conforme se recuenta en la Sentencia que hoy dicta el Tribunal, el Partido Popular Democrático comenzó un procedimiento de recusación por razón de domicilio de varios electores ante la Comisión Local de Elecciones del Precinto 66 de Orocovis. Luego de que se acreditara que no se pudieron realizar el diligenciamiento personal se autorizó que dichos electores fueran notificados por edictos.
Conforme al procedimiento establecido, el Presidente de *952 la Comisión Local de Elecciones de Orocovis autorizó la publicación mediante edicto el 20 de mayo de 2008. El Partido Popular Democrático tenía hasta el 30 de mayo para publicar ese edicto. Dos días antes de que venciera el término, el PPD solicitó la publicación de los edictos. El edicto finalmente se publicó el 31 de mayo de 2008 en el periódico El Vocero de Puerto Rico', es decir, vencido ya el término provisto en el Reglamento para ello.
El Partido Popular Democrático alegó que debido a trámites burocráticos internos del partido no se pudo solicitar la publicación al periódico hasta pasados ocho días de que se expidieran los edictos. Esta explicación a mi juicio, es jurídicamente insuficiente para concluir que existió justa causa para el incumplimiento. La burocracia partidista nunca puede ser justa causa para privar a un elector de su derecho al voto. Le corresponde al partido asegurarse que su maquinaria burocrática se mueva con agilidad. Lo que está en juego, después de todo, es precisamente uno de los derechos más preciados en una democracia.
No hay duda de que el Partido Popular Democrático dejó para última hora solicitar el edicto correspondiente. Pudiendo acudir a la Comisión Estatal de Elecciones para solicitar una prórroga para extender el término de la notificación no lo hizo. Véase el Art. 6.7 del Reglamento, pág. 26. Con lo cual, debe atenerse a las resultas de una actuación que denota dejadez e informalidad en el trámite de notificación, que a nuestro juicio no se justifica.
Corresponde al diligenciante, en este caso al Partido Popular Democrático, cumplir con los términos de notificación para que se le garantice al elector el debido proceso de ley al privarle de su derecho fundamental. No albergo duda alguna de que el Partido Popular Democrático no actuó con la debida diligencia. Nuevamente, los obstáculos burocráticos que existan en una organización político partidista no eximen del cumplimiento riguroso con los requisitos reglamentarios exigibles en casos de esta naturaleza. Tampoco es responsabilidad del periódico asegurarse de que los edictos se publiquen en el término exigido, ya que *953 dicha responsabilidad es exclusivamente del partido político. Si se acude tarde al periódico para solicitar una publicación se asume la responsabilidad de que no se pueda publicar a tiempo el edicto.
Para concluir, disentimos de la sentencia que hoy se dicta y estimamos que actuó correctamente el foro apelativo intermedio. La inobservancia del procedimiento y de los requisitos estatuidos para perfeccionar una recusación la hacen inefectiva, en consecuencia procedía desestimar las recusaciones presentadas.

(1) El Reglamento para el Trámite de Recusaciones de Puerto Rico, Comisión Estatal de Elecciones, 13 de noviembre de 2007 (el Reglamento), aprobado por la Comisión Estatal de Elecciones el 28 de noviembre de 2007, define varios tipos de recusaciones; a saber: la recusación o exclusión, la recusación de electores inscritos fraudulentamente y la recusación institucional. Hoy nos concierne la primera de ellas. Esta se define en el Reglamento según los términos siguientes: “El procedimiento mediante el cual se requiere se elimine la inscripción de un elector del Registro del cuerpo Electoral, o cuya petición de inscripción, transferencia u otra transacción haya sido impugnada durante el proceso de inscripción.” Id., pág. 4.